IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WALKER MACHINE TOOL | ) | CASE NO. 19-04553-DSC11 |
| SOLUTIONS, INC., | ) | CHAPTER 11 |
| | ) | |
| EIN: XX-XXX0899 | ) | |
| | ) | |
| DEBTOR. | ) | |

**DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF**
**WALKER MACHINE TOOL SOLUTIONS, INC.**
**DEBTOR AND DEBTOR-IN-POSSESSION**

**AUGUST 7, 2020**

STUART M. MAPLES
MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com
Attorney for Debtor-in possession

**Solicitation of Votes with Respect to the Chapter 11 Plan**

**of**

**WALKER MACHINE TOOL SOLUTIONS, INC.**

THE MANAGEMENT OF WALKER MACHINE TOOL SOLUTIONS, INC., DEBTOR AND DEBTOR-IN-POSSESSION (THE "DEBTOR" OR THE "COMPANY"), BELIEVES THAT THE DEBTOR'S CHAPTER 11 PLAN DATED AUGUST 7, 2020 (THE "PLAN"), IS IN THE BEST INTERESTS OF ITS CREDITORS.  ALL CREDITORS ARE PROVIDED FOR IN THIS DISCLOSURE STATEMENT.  TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED, AND RECEIVED BY COUNSEL FOR THE DEBTOR, STUART M. MAPLES, MAPLES LAW FIRM, PC, 200 CLINTON AVENUE WEST, SUITE 1000, HUNTSVILLE, ALABAMA, 35801, BEFORE 5:00 P.M. ON _____, **2020** (THE "VOTING DEADLINE").

**ALL CREDITORS ARE ENCOURAGED TO READ AND CONSIDER CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT PRIOR TO SUBMITTING BALLOTS PURSUANT TO THIS SOLICITATION.  THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN AND IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN.**

-------------------------------------

ALL CAPITALIZED TERMS IN THIS DISCLOSURE STATEMENT NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE PLAN. THE SUMMARIES OF THE PLAN AND THE OTHER DOCUMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED BY REFERENCE TO THE PLAN AND SUCH OTHER DOCUMENTS THEMSELVES.

-------------------------------------

I.    **INTRODUCTION.**

    A.    **Preliminary Statement.**

On November 5, 2019, Walker Machine Tool Solutions, Inc., debtor and debtor-in-possession (the "Debtor"), filed a voluntary Chapter 11 under of the Bankruptcy Code before the United States Bankruptcy Court for the Northern District of Alabama, Southern Division.  The Debtor is managing its assets, business and financial affairs as a debtor-in-possession, subject to the supervision of the Bankruptcy Court and the provisions of the Bankruptcy Code.

Case 19-04553-DSC11   Doc 78   Filed 08/07/20   Entered 08/07/20 12:57:08   Desc Main
Document   Page 2 of 23

As set forth in more detail below, the Plan provides that the Debtor shall be allowed to retain its assets, which are subject to certain liens and interest, of which the Debtor has agreed to pay as provided for in the Plan.

Accompanying this Disclosure Statement are copies of the following:

1.    **The Order of the Bankruptcy Court dated** _____, approving this Disclosure Statement and solicitation and voting procedures related to the Plan and setting the hearing on confirmation of the Plan for _____.

2.    **The Plan.**

3.    **A ballot for accepting or rejecting the Plan.** Ballots are provided to holders of Allowed Claims in Classes 1, 2, and 3 so that they may vote to accept or reject the Plan under the provisions of the Bankruptcy Code. *See* Section I.B.2 ("Voting on the Plan") for additional information regarding ballots and voting procedures.

**B.    Plan Confirmation Process.**

    1.    **Approval of Disclosure Statement.**

After notice and a hearing held on _____, by order dated _____, pursuant to § 1125 of the Bankruptcy Code, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of the holders of Claims or Interests in Classes 1, 2, and 3 to make an informed judgment whether to accept or reject the Plan. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

    2.    **Voting on the Plan.**

a.    <u>Who May Vote</u>. Pursuant to § 1126 of the Bankruptcy Code, holders of Allowed Claims or Interests may vote to accept or reject the Plan, provided, however, that (i) the holders of Claims or Interests in classes that are not conclusively impaired under the Plan are presumed to have accepted the Plan and solicitation of acceptances with respect to such classes is not required, and (ii) a class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such class do not entitle the holders of Claims or Interests to receive or retain any property under the Plan on account of such Claims or Interests. Accordingly, the Debtor is soliciting acceptance of the Plan only from holders of Claims or Interests in the following classes, which are "impaired" under the Plan and are entitled to accept or reject the Plan:

Case 19-04553-DSC11   Doc 78   Filed 08/07/20   Entered 08/07/20 12:57:08   Desc Main
Document   Page 3 of 23

- **Class 1** – Allowed Secured Claim of DCR Mortgage Partners IX, LP.
- **Class 2** - Allowed Unsecured Claims.
- **Class 3** – Equity Interest Holders.

Only Persons who hold Claims or Interests in the foregoing impaired classes are entitled to vote to accept or reject the Plan.

**THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF HOLDERS OF CLAIMS AND INTERESTS IN ALL IMPAIRED CLASSES. THE DEBTOR RECOMMEND THAT ALL PERSONS ENTITLED TO VOTE CAST A BALLOT TO ACCEPT THE PLAN.**

b.  <u>Deadline for Voting</u>.  The Bankruptcy Court has fixed 5:00 p.m. (Central Time) on _____, as the deadline for voting.  To be counted, all ballots must be completed and received, as set forth below, before the Voting Deadline.

c.  <u>Voting Procedures</u>.  Holders of Claims in Classes 1, 2, and 3 should complete and sign the enclosed Ballot and deliver it by mail, hand or overnight delivery to:

Stuart M. Maples
Maples Law Firm, PC
200 Clinton Ave. W., Suite 200
Huntsville, Alabama 35801

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY THE VOTING DEADLINE OF 5:00 P.M. CENTRAL TIME ON _____. You must ensure the receipt of the ballot before the Voting Deadline. Ballots received after the Voting Deadline will not be counted.**

d.  <u>Significance of Voting</u>.  The vote for each holder of a claim in an impaired class is important.  Acceptance by each impaired class of claims is a condition to confirmation of the Plan on a consensual basis.  The Bankruptcy Code defines "acceptance" of a plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan.  If a class or classes of impaired Claims does not accept the Plan, the Debtor has required confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code, which permits confirmation, notwithstanding non-acceptance by one or more impaired classes, if the Plan does not discriminate unfairly and is "fair and equitable" with respect to each non-accepting class. **THESE CALCULATIONS ARE BASED ONLY ON THE CLAIM AMOUNTS AND NUMBER OF CREDITORS WHO ACTUALLY VOTE. THE VOTE OF EACH CREDITOR IS IMPORTANT.**

-4-

The Debtor will prepare and file with the Court a certification of the results of the balloting with respect to the Plan. **ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED, NOR WILL ANY BALLOTS RECEIVED BY FACSIMILE BE ACCEPTED.**

### 3. Confirmation Hearing.

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a confirmation hearing to consider confirmation of the Plan.

At the Confirmation Hearing, the Court will (i) determine whether the requisite vote has been obtained for each Class, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing and filed and served as required by the Court pursuant to the Order Approving Disclosure Statement. **Specifically, all objections to the confirmation of the Plan must be served in a manner so as to be received on or before _____, at 5:00 p.m. (Central Time) by:**

    a.    <u>Clerk of the Court</u>, United States Bankruptcy Court, Robert S. Vance Federal Building, 1800 5th Avenue North, Birmingham, Alabama, 35203.

    b.    <u>Counsel to the Debtor</u>, Stuart M. Maples, Maples Law Firm, PC, 200 Clinton Ave. West, Suite 1000, Huntsville, Alabama, 35801; and

    c.    <u>J. Thomas Corbett</u>, Office of the Bankruptcy Administrator, 1800 5th Avenue North, Birmingham, Alabama, 35203.

## II. BUSINESS AND HISTORY OF DEBTOR.

### A. Company Structure.

The Debtor is a company formed in Alabama in 2005. The Directors and Incorporators of the Debtor are Linda Walker and Ronald Walker. Mr. Walker passed away on May 4, 2020.

### B. History.

The Debtor was a machine shop catering to the steel industry in and around Birmingham. Due the decline in that industry, Debtor ceased operations in 2017.

### C. Assets.

Schedule A/B, filed in this matter and incorporated herein as <u>Exhibit A</u>, accurately reflects the assets of the Debtor.

D.   **Debt Structure.**

    1.   **Administrative Expense Claims.**

At Confirmation, the Debtor anticipates administrative expense claims allowable under the Plan by Maples Law Firm, P.C., in the approximate amount of $18,500.00.

All Administrative Claims are Unclassified.

    2.   **Tax Claims.**

The Debtor currently owes the following taxes:

(i)   <u>IRS</u>:  The IRS asserts a Priority Claim for taxes owed in the amount $1,172.27.

All Tax Claims are Unclassified.

    3.   **Allowed Secured Claims.**

The Debtor currently has one (1) secured lender:  DCR Mortgage Partners IX, LP.

The Plan places the Secured Claim in Class 1.

E.   **Summary of Unsecured Debt for Distribution Purposes Under the Plan.**

The Plan places all Unsecured Claims in Class 2.  The total amount of these claims is approximately $27,779.22.

The Debtor reserves all rights, claims, and defenses with respect to the allowance, amount, and classification of all claims.  Moreover, some of the claims are disputed or unliquidated. Additional claims may be unknown to the Debtor.  The Debtor reserves all rights and makes no representation or warranty as to the number of Allowed Claims.

F.   **Potential Claims of Debtor.**

The Debtor is currently unaware of any potential claims they may have against any entity.

III.   **EVENTS LEADING TO CHAPTER 11**

The threat of foreclosure of the real estate by a predecessor lender resulted in the Debtor filing for Chapter 11 on November 5, 2019. .

## IV.     CHAPTER 11 PROCEEDINGS.

**Post-Filing Operations.**     After filing this Chapter 11 case, the Debtor has operated its business and managed its assets and affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.   The Debtor will file monthly reports with the Bankruptcy Court summarizing its post-filing operating results.

On or about Debtor December 16, 2019, Debtor filed its Application to Employ Prestige Equipment as Broker for Private Sale of Equipment and Inventory (Doc 31).  The Court approved Debtor's application on January 30, 2020 (Doc 39).

On or about February 6, 2020, Debtor filed its Application to Employ LAH Commercial Real Estate, LLC ("LAH") as Realtor (Doc 41).  The Court approved Debtor's application on April 10, 2020 (Doc 52).  LAH is listing 4615 Main Street for $325,000.00 and 1320 Adamsville Industrial Blvd for $525,000.00.  The respective listings are attached hereto as Exhibit B and Exhibit C.

On or about April 29, 2020, an online auction was held.  The auction results are attached hereto as Exhibit D.

On or about July 15, 2020, Debtor filed its Motion to Approve Sale of one (1) Conex trailer to Jeff Osborne in the amount of $2,200.00 (Doc 67).  The Court has not entered its order approving Debtors Motion as of the filing of this Disclosure Statement.

On or about August 3, 2020, Debtor filed its Motion to Approve Sale of one (1) 2009 Faro Ion Portable Laser Tracker System in the amount of $15,000.00 (Doc75).  The Motion is pending before the Court and set for hearing on August 12, 2020.

The Debtor is marketing the real estate utilizing the Court approved Realtor.

## V.     SUMMARY OF PLAN.

NOTE: The following is a summary of the Plan.  Read the Plan itself for a full disclosure of its contents.  The following summary is provided for convenience only and is not intended as a complete statement of the terms of the Plan.  If the summary conflicts in any way with the Plan, the terms of the Plan shall control.  **REFERENCE TO THE PLAN IS NECESSARY FOR A FULL UNDERSTANDING OF ITS TERMS.**

**A.     Overview.**  The Plan provides for the payment of secured and unsecured debt.

**B.     Disclosure of Unclassified Claims.**

**1.     Administrative Expense Claims.**     This class shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code.  This class is divided into the following sub-classes:

-7-

(i)     Maples Law Firm, P.C.:  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy.   These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid either upon the Effective Date of the Plan or in a manner agreed upon by the Debtor and Maples Law Firm. The amount of professional compensation due at confirmation is estimated to be approximately $18,500.00.

**2.  Tax Claims.**

(i)     The Allowed Priority Claim of the IRS in the amount of $1,172.27.

**C.     Disclosure of Unimpaired Classes.**

All classes of claims are impaired under the Plan.

**D.     Disclosure of Impaired Classes.**

**Class 1 – Allowed Secured Claim of DCR Mortgage Partners IX, LP.**
Class 1 shall consist of the Allowed Secured Claim of DCR Mortgage Partners IX, LP ("DCR").  A proof of claim has been filed for $578,640.94, accruing interest at 5.0%.

**Class 2 – Allowed Unsecured Claims.**
Class 2 shall consist of the Allowed Unsecured Claims of all other unsecured creditors.

**Class 3 – Equity Interest Holders.**
Class 3 shall consist of the equity position of Director/Incorporator Linda Walker in the Debtor.

**VI.     IMPAIRMENT AND TREATMENT OF CLASSES UNDER THE PLAN**

**A.     Treatment of Unclassified Claims.**  Treatment of all claims and interests shall be in accordance with the Plan.

**1.     UNCLASSIFIED CLAIMS.**

**Administrative Expense Claims:**  This class shall consist of all administrative expense claims of the Debtor' Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code.

(i)     Maples Law Firm, P.C.:  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy.   These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid either upon the Effective Date of the Plan or in a manner agreed upon by the Debtor and Maples Law Firm. The amount of professional compensation due at confirmation is estimated to be approximately $18,500.00.

-8-

**Tax Claims:**

    (i)    <u>IRS</u>: The IRS asserts a Priority Claim for taxes owed in the amount $1,172.27. The Allowed Priority Claim of the IRS shall be paid in full on the Effective Date of the Plan. This payment will be paid directly by the Debtor.

## 2.    CLASSIFIED CLAIMS.

**Class 1 – Allowed Secured Claim of DCR Mortgage Partners IX, LP.**
Class 1 shall consist of the Allowed Secured Claim of DCR Mortgage Partners IX, LP in the amount of $578,640.94.

**Class 2 –Allowed Unsecured Claims.**
Class 2 consists of the Allowed Unsecured Claims of all other unsecured creditors.

**Class 3 – Equity Interest Holders.**
Class 3 shall consist of the equity position of Member Linda Walker in the Debtor. The Member, or her assigns, will receive no equity distribution unless and until Class 2 is paid in full.

## VII.    IMPLEMENTATION OF THE PLAN

### A.    Means of Executing the Plan.

    1.    The Debtor proposes to implement the Plan as follows:

The Debtor agrees to sell all personal property of value and or all of the real estate of the Debtor to an unrelated third party. These sales are anticipated to be accomplished pursuant to § 363(f) of the Bankruptcy Code.

The Debtor agrees to list the properties for sale and shall apply the sales proceeds to payment of the debt to DCR Mortgage Partners IX, LP which has a valid, first priority lien on each. The sale of each property shall be subject to this Court's approval after notice and hearing. Regardless of the status of property sales, the Debtor shall be obligated as follows: to reduce the total amount of the loan by 50% within 12 months of the Effective Date; to reduce the remaining loan amount by 50% during the following 6 months; and to retire the remaining balance of the loan within 24 months from the Effective Date. In the event the Debtor fails to reduce debt in accordance with this schedule then remaining property will be surrendered to DCR Mortgage Partners IX, LP.

    2.  **Management.** The Debtor shall continue to manage the liquidation effort. Linda Walker receives no salary or other benefits, and would not receive salary or benefits under the Plan.

**3. Creditors' Committee.** No creditors' committee was formed in this matter. Operating reports will continue and shall be available to the creditors until the Plan is substantially consummated and the case is closed.

**4. Disbursing Agent.** Linda Walker shall be the Disbursing Agent.

**5. *De Minimis* Distributions.** Notwithstanding anything to the contrary contained in the Plan, the Debtor shall not be required to transmit Cash to the holder of an Allowed Claim in an impaired class of claims if the amount of Cash otherwise due is less than $10.00. All Cash not so distributed shall be deposited into the Unpaid Claims Reserve, and such Cash shall become the sole and exclusive property of the Debtor.

**B.     Treatment of Executory Contracts and Unexpired Leases.**

Pursuant to § 1123(b)(2) of the Bankruptcy Code, except for those executory contracts and unexpired leases, if any, assumed pursuant to the Plan or as to which the Debtor has filed prior to the Confirmation Date a motion to assume and assign or a motion to reject, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, including, without limitation, all executive and employee severance, vacation, benefit and retirement plans, contracts and agreements (including, but not limited to all stay or retention programs, incentive plans, accelerated vesting plans, accelerated benefit plans, and any other plan, agreement, contract or document relating to or providing for payments to executives or employees not part of recurring salaries and wages), are deemed rejected pursuant to § 364(a) of the Bankruptcy Code as of the Effective Date.

Each party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such entities) asserting a claim for damages arising from such rejection shall file, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; *provided, however,* that (1) the Bar Date established for rejection damages claims in this Section of the Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by the Debtor before Confirmation for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely file a proof of claim in accordance with the Plan shall be forever enjoined and barred from asserting such Claim against the Debtor, the Estate or any property of the Estate.

**C.     Provisions Governing Distributions.**

**1.     Procedure for Determination of Claims.**

a.     Objections to Claims. Notwithstanding the occurrence of the Confirmation Date, and except as to any Claim that has been Allowed prior to such date or pursuant to this Plan, the Debtor, or any other Person authorized under § 502(a) of the Bankruptcy Code, may object to the allowance of any Claim against the Debtor or seek estimation thereof on any grounds permitted by the Bankruptcy

-10-

Code; provided, however, that after the Effective Date the Bankruptcy Court shall have exclusive authority and responsibility to prosecute objections to Claims.

b. <u>Disputed Claims</u>. Payments or Distributions under the Plan on account of disputed claims shall be held in reserve pending the allowance or disallowance of the Claim. To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall promptly be returned to the Disbursing Agent for deposit in the Unpaid Claims Reserve. To the extent that a disputed claim ultimately becomes an Allowed Claim, payments, and distributions on account of such Allowed Claim shall be made in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Code allowing such Claim becomes a Final Order, any property held in reserve as pursuant to the Plan that would have been distributed prior to the date on which a disputed claim becomes an Allowed Claim shall be distributed, together with any dividends, payments or other distributions made on account of such property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

**D.    Distributions.**

**1.    <u>Undeliverable Distributions</u>.** Except as otherwise provided herein, distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective proofs of Claim filed by such holders; (b) at the addresses set forth in any written notice of address change delivered to the Debtor after the date of the filing of any related proof of Claim; or (c) at the address reflected in the Schedules or the Debtor's records if no proof of Claim has been filed and if the Debtor has not received written notice of a change of address, as set forth herein. If a distribution is returned as undeliverable, the maker of such distribution shall hold such distribution and shall not be required to take any further action with respect to the delivery of the distribution unless and until the earlier of (1) the date on which Debtor is notified in writing of the then current address of the holder entitled to receive the distribution or (2) within six (6) months from the first payment due on the Unsecured Claims, except as the Bankruptcy Court may otherwise order. If the Disbursing Agent is notified in writing of the then current address of the holder before the expiration of the six (6) month period, the Disbursing Agent shall promptly make the distribution required by the Plan to the holder at the then current address. If the Disbursing Agent is not so notified by the end of the six (6) month period, and the holder of the Claim does not by such date assert a right to such undeliverable distribution, the holder shall be forever barred from asserting a Claim to such undeliverable distribution, which shall become available for distribution to holders of other Allowed Claims as provided in the Plan.

**2.    <u>Manner of Payment</u>.** Distributions by the Disbursing Agent may be made, at the option of the Disbursing Agent, in cash, by wire transfer, or by check drawn on such accounts established by the Disbursing Agent as necessary to effectuate the Plan.

3.     **Interest.**  Unless otherwise required by Final Order of the Bankruptcy Court or applicable bankruptcy law, interest shall not accrue or be paid after the Filing Date on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Filing Date on any Claim.

4.     **Fractional Dollars; *De Minimis* Distributions.**

a.     Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

b.     No interim distribution will be made on account of any Allowed Class 2 Claim to the holder of any such Allowed Class 2 Claim if the amount of such distribution for the Allowed Claim is less than $10.00.  Immediately before the last distribution date on Unsecured Claims, the Disbursing Agent shall (i) aggregate the amount of all distributions that would have been made on account of an Allowed Claim but for this *de minimis* provision and (ii) on the last distribution date, make a distribution on account of such Allowed Claim in accordance with the Plan.

5.     **Distributions on Claims Allowed Pursuant to Section 502(h) of the Bankruptcy Code.**  Except as otherwise provided in the Plan, no distributions shall be made on account of a Claim arising as a result of a Final Order entered in an avoidance action until such Claim becomes an Allowed Claim.  Any Claim that is allowed pursuant to § 502(h) of the Bankruptcy Code prior to the first distribution date as a result of the entry of a Final Order in any avoidance action will be treated in accordance with the provisions of the Plan.  All holders of such Claims that become Allowed Claims after the first distribution date will receive an initial distribution on the distribution date next following the date on which their Claim becomes an Allowed Claim and shall receive subsequent distributions, if any, in accordance with the provisions of the Plan.  Distributions under the Plan on account of anticipated Claims that may arise or become allowable as a result of the entry of a Final Order in any avoidance action that are not Allowed Claims as of the first distribution date may be held in reserve, at the discretion of the Disbursing Agent, pending the allowance of disallowance of such Claims.

6.     **Disbursing Agent's Compliance with Tax Requirements.**  In compliance with § 346 of the Bankruptcy Code, to the extent applicable, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.  The Disbursing Agent shall be authorized to take any and all action necessary and appropriate to comply with such requirements.  As a condition to making any distribution under the Plan, the Disbursing Agent may require the holder of an Allowed Claim to provide such holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of this Plan, each entity receiving a distribution of dash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction

and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of any such distribution.

7. **Reserve for Disputed Claims.** Except as otherwise provided in the Plan, no distributions shall be made on account of a disputed claim until such claim becomes an Allowed Claim. In making any distribution on Allowed Claims, the Disbursing Agent shall calculate the amount of such distribution (for purposes of making a Pro Rata calculation) as if each disputed claim were an Allowed Claim, unless the Bankruptcy Court enters an order specifying that the disputed claim should be treated as being a different amount for purposes of such calculation. The Disbursing Agent shall reserve from distributions a sufficient amount to make a distribution on a disputed claim in the event it becomes an Allowed Claim (unless the Bankruptcy Court orders otherwise). To the extent a disputed claim is allowed pursuant to a Final Order, any reserves attributable to the disallowed portion of the disputed claim shall be distributed on account of Allowed Claims pursuant to the terms of the Plan.

8. **Setoffs.** Subject to § 553 of the Bankruptcy Code, in the event the Debtor has a claim of any nature whatsoever against a holder of a Claim, the Disbursing Agent may, but is not required to, set off the Debtor's claim against such Claim (and any distributions or other rights to receive property arising out of such Claim under the Plan) unless any such claim of the Debtor is or will be released under the Plan. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any claim of the Debtor.

9. **Reliance on Claims Register.** In making distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the claims register maintained by the Bankruptcy Court or its designee as claims agent in the case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

E. **Reservation of the Rights of the Estate.**

All claims, rights to payment, causes of action, cross-claims and counterclaims of the Debtor of any kind or nature whatsoever including, without limitation, causes of action and avoidance actions, against third parties arising before the Confirmation Date that have not been disposed of prior to the Effective Date shall be preserved and treated in accordance with the Plan. Without limitation of the foregoing, pursuant to § 1123(b) of the Bankruptcy Code, the Debtor shall enforce, for the benefit of the holders of Allowed Class 2 Claims (a) the causes of action and avoidance actions; (b) all Claims, causes of action, and related recoveries against any person; and (c) all other claims, rights to payment and causes of action, cross claims and counterclaims of any nature or type whatsoever, at law or in equity, against any person.

VIII. **TAX CONSEQUENCES OF PLAN.**

The following summary discusses the material federal income tax consequences expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code'), applicable Treasury Regulations,

-13-

judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought by the Debtor or his advisors. Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the holders of Claims.

The following summary is for general information only. The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This summary does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This summary does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and non-resident alien individuals. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THE PLAN.

### A.    Federal Income Tax Consequences to the Debtor.

NOTHING STATED IN THE DISCUSSION WHICH FOLLOWS IS OR SHOULD BE CONSTRUED AS TAX ADVICE TO ANY CREDITOR OF THE DEBTOR. CREDITORS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.

The statements contained in this portion of the Disclosure Statement are based on existing provisions of the Internal Revenue Code of 1986, as amended ("Code"), Treasury Regulations promulgated thereunder, existing court decisions, published Revenue Rulings, Revenue Procedures and Technical Information Releases of the Internal Revenue Service ("IRS"), and legislative history. Any changes in existing law may be retroactive, may affect transactions commenced or completed prior to the effective date of the changes, and may significantly modify this discussion.

Legislation may be introduced in future sessions of Congress which could eliminate or alter some of the anticipated tax results of the Plan. No attempt has been made to evaluate in any detail the impact, which may be substantial, of any proposed legislation on the Plan.

The following is intended to be only a summary of certain tax considerations under current law which may be relevant to the creditors of the Debtor. It is impractical to set forth in this Disclosure Statement all aspects of federal, state, and local tax law which may have tax consequences to the Debtor and his creditors.

Some of the tax aspects discussed herein are complex and uncertain. Moreover, the discussion below is necessarily general, and the full tax impact of the Plan upon the creditors will

-14-

vary depending upon each creditor's individual circumstances. Therefore, all the creditors should satisfy themselves as to the federal, state, and local tax consequences of the Plan by obtaining advice solely from their own advisors.

THE CREDITORS SHOULD NOT CONSIDER THE DISCUSSION WHICH FOLLOWS TO BE A SUBSTITUTE FOR CAREFUL, INDIVIDUAL TAX PLANNING AND ARE EXPRESSLY CAUTIONED THAT THE INCOME TAX CONSEQUENCES TO THE CREDITORS ARE COMPLEX AND VARY CONSIDERABLY DEPENDING UPON EACH PARTY'S CIRCUMSTANCES. ACCORDINGLY, CREDITORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS WITH REGARD TO THEIR PARTICULAR TAX SITUATIONS.

1. **The Plan.** The terms of the Plan provide for payment provisions which should be analyzed individually for each Creditor with its tax advisor.

2. **Creditors.**

a. To the extent that Creditors receive payments under the Plan as interest, such Creditors will recognize interest income under § 51(a)(4) of the Code.

b. To the extent that, pursuant to the Plan, creditors receive cash payments from the Debtor in satisfaction of their claims, such creditors may recognize gain or loss, as the case may be, equal to the difference between the amount of the cash so received and their adjusted basis in such claim.

c. The gain or loss to be recognized by such creditors will be either ordinary income or capital gain depending on, among other factors, the status of the creditor and the nature of Claim in the hands of the creditor. While capital gains and ordinary income are presently taxed at the same rates, §§ 1211 and 1212 of the Code limit the ability to offset net capital losses against ordinary income.

3. **Bad Debt Deduction.** Section 166 of the Code permits the deduction of debts which have become totally or partially worthless. Therefore, to the extent that certain creditors will receive less than full payment from the Debtor with respect to the debt owed such creditors, such creditors may be able to deduct such bad debts for federal income tax purposes. The nature of the deduction for a bad debt depends on its classification as either a business or non-business debt. For non-corporate taxpayers, non-business bad debts are deductible as short-term capital losses, and so are subject to the limitations on deductibility of capital losses under §§ 1211 and 1212 of the Code. Business bad debts and bad debts held by corporate taxpayers are deductible as ordinary losses. A bad debt is deductible to a creditor at the time it becomes wholly or partially worthless determined under the particular facts and circumstances.

-15-

**4.** <u>**Income from the Discharge of Indebtedness.**</u>  As a general rule, § 61(a)(12) of the Code, requires that gross income for federal income tax purposes include income from the discharge of indebtedness.  However, § 108(a)(1) of the Code, specifically excludes discharge of indebtedness income from gross income if the discharge occurs in a Title 11 (bankruptcy) case.  Therefore, the Debtor will not recognize income on the discharge of indebtedness pursuant to the Plan.

Section 108(b) of the Code does, however, provide that the amount excluded from gross income under § 108(a)(1) must be applied to reduce, in order, the following tax attributes of the Debtor: (a) net operating losses and net operating loss carryovers; (b) general business credits; (c) capital loss carryovers; (d) the basis of the property of the taxpayer (but not below the aggregate liabilities of the taxpayer after the discharge, pursuant to § 1017(b)(2) of the Code); and (e) foreign tax credit carryovers.

Alternatively, the Debtor may elect, under § 108(b)(5) of the Code, to apply any portion of the reduction referred to above to a reduction of the taxpayer's basis in depreciable property and real estate held for sale in the ordinary course of business.

The effect of the reduction of tax attributes is to defer the recognition of income on the discharge of indebtedness income until such time as the reduced tax attribute would have otherwise been available to the Debtor to decrease taxable income.

**5.** <u>**State and Local Taxes**</u>.  In addition to the federal income tax consequences described above, Creditors should consider potential state and local tax consequences which are not discussed herein.  In general, the State of Alabama imposes a tax against income of residents and non-residents of Alabama who have income from sources within the state of Alabama.  The Alabama income tax is imposed on taxable income at a graduated rate of up to five percent (5%).

THE FOREGOING ANALYSIS IS NOT INTENDED TO BE A SUBSTITUTE FOR CAREFUL TAX PLANNING, PARTICULARLY SINCE CERTAIN OF THE INCOME TAX CONSEQUENCES OF THE PLAN WILL NOT BE THE SAME FOR ALL CREDITORS, DUE TO THEIR RESPECTIVE DIFFERING SOURCES AND TYPES OF INCOME AND DEDUCTIONS, AND OTHER FACTORS. ACCORDINGLY, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS WITH REFERENCE TO THEIR OWN TAX SITUATION.

## IX.  PLAN CONFIRMATION PROCESS.

### A.  Confirmation.

At the Confirmation Hearing, the Bankruptcy Court shall confirm the Plan if the Plan satisfies all requirements of § 1129(a) include the following: (1) the Plan must be accepted by all impaired classes, (2) the Plan must be feasible, and (3) with respect to each holder of a Claim or Interest that does not vote to accept the Plan (even if such holder is a member of a Class that as a whole votes to accept the Plan), the Plan must be in the "best interests" of such holder in that the

-16-

Plan provides for a distribution to the holder that is not less than the amount such holder would receive in a hypothetical Chapter 7 liquidation of the Debtor. With respect to the requirement that each impaired class votes to accept the Plan, § 1129(b) provides that if all other requirements of § 1129(a) are satisfied, the Plan still may be confirmed if the Plan, with respect to each impaired class that does not accept the Plan, "does not discriminate unfairly" and is "fair and equitable" with respect to such class. The acceptance, feasibility, unfair discrimination, and fair and equitable concepts are discussed in more detail below.

> **B.**     **Acceptance of Plan by Voting.**

For the Plan to be accepted by an impaired class of claims, it must be accepted by holders of Claims in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims in such Class held by creditors that actually vote. A Class is impaired if the legal, equitable, or contractual rights of the members of such class are modified or altered by the Plan (with an exception, not applicable to the Plan, for curing defaults, reinstating maturity, and compensating certain damages). Classes 1, 2, and 3 in this Plan are impaired and entitled to vote.

If any impaired Class does not accept the Plan, and at least one impaired Class accepts the Plan, the Debtor may seek confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code. To obtain confirmation despite non-acceptance by one or more impaired Classes, the Debtor must show to the Bankruptcy Court that the Plan does not discriminate unfairly and is fair and equitable with respect to each such Class. Each of these requirements is discussed further, as follows:

> **1.**     **Unfair Discrimination.** A plan does not discriminate unfairly with respect to a non-accepting Class if it protects the rights of such Class in a manner consistent with the treatment of other Classes with similar rights. The unfair discrimination test does not require that similarly situated Classes be treated in exactly the same way. The test requires that such Classes be treated substantially similarly *or* if not treated substantially similarly, that differences in treatment be fair.

> **2.**     **Fair and Equitable.** A plan does not discriminate unfairly if either (a) each holder of a Claim or Interest in the non-accepting Class receives or retains under the Plan property of a value equal to the Allowed amount of such Claim or Interest; or (b) the holders of Claims or Interests that are junior to such Class receive or retain nothing under the Plan on account of such Claims or Interests (the "Absolute Priority Rule").

> **C.**     **Feasibility.**

As a condition to confirmation of the Plan, § 1129(a) of the Bankruptcy Code requires that Confirmation is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization. The Plan provides for reorganization of the Debtor's assets. The Debtor is not likely to need further financial reorganization. Accordingly, the Plan is feasible and the Debtor can demonstrate that the Plan is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization of the Debtor.

## D. Best Interests of Creditors Test.

Confirmation requires that each holder of an Allowed Claim and Interest that is included in an Impaired Class (a) accept the Plan or (b) receive or retain under the Plan, property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. This requirement applies to all dissenting or non-voting members of impaired Classes, even with respect to a Class that has accepted the Plan.

To determine what holders of Claims and Interests would receive in a hypothetical Chapter 7 liquidation, the Bankruptcy Court will consider the dollar amount that would be generated in a straight liquidation of the Debtor's assets and properties. Such amount would be reduced by the costs and expenses of liquidation by additional administrative expense claims that would accrue in Chapter 7. Chapter 7 costs and expenses would include, without limitation, (a) statutory fees payable to the Chapter 7 trustee pursuant to § 326 of the Bankruptcy Code; (b) fees payable to attorneys, accountants, auctioneers, liquidators and other professional advisors that the Chapter 7 Trustee would engage to assist in discharging his duties under the Bankruptcy Code; and (c) any unpaid expenses incurred by the Debtor during the case, such as unpaid vendor invoices and fees and reimbursement of expenses of attorneys, accountants and other professional advisors retained by the Debtor or statutory committees or any party asserting a substantial contribution claim under § 503(b)(3) of the Bankruptcy Code.

Based on the foregoing, holders of Allowed Claims and Interests in Class 1 would not receive full distribution in Chapter 7, and Class 2 would likely receive no distributions. The Plan also provides for payment of priority and administrative claims that would be payable from the proceeds of causes of action before any distribution to Unsecured Claims. The Plan, therefore, provides for distributions not less than the value that such holders would receive in Chapter 7.

Accordingly, the Plan meets the best interests of creditors test with respect to all holders of Claims and Interests. The Debtor believes the Plan will maximize the potential return to all parties in interest.

There are no known avoidance actions.

Based on the foregoing, the Debtor has concluded that reorganization under the Plan will result in a greater distribution to holders of all classes than liquidation through Chapter 7.

## X. ALTERNATIVES TO PLAN.

As an alternative to confirming the Plan, the Bankruptcy Court could convert the case to a case under Chapter 7 of the Bankruptcy Code, dismiss the case, or consider another Chapter 11 plan.

### A.    Liquidation under Chapter 7.

If the Plan is not confirmed, and no other alternative plan is proposed, the Bankruptcy Court could find cause to convert the case to a case under Chapter 7 of the Bankruptcy Code. In Chapter 7, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to the Debtor's creditors in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that conversion of the case to a case under Chapter 7 of the Bankruptcy Code would result in lower distributions to all Creditors. Substantially all assets of the Debtor, with the exception of the avoidance actions, are subject to liens of the holder of the Secured Claim (the "Secured Party"). In a Chapter 7 case, the Secured Party likely would be able to obtain relief from automatic stay under § 362(d) to foreclose on its liens. In this event, essentially no assets, other than avoidance actions, would remain to satisfy the claims of creditors other than the Secured Party

As disclosed on the Debtor's Summary of Assets and Liabilities, a copy of which is attached hereto as <u>Exhibit E</u>, the total assets of the Debtor are $1,750,361.32 and the total liabilities are $582,993.81.

Conversion to Chapter 7 would result in a No Asset Case.

Based on the foregoing, the Debtor believe that holders of Claims and Interests would receive a lower distribution on account of such Claims and Interests if the case were converted to Chapter 7.

### B.    Comparison of Plan.

The Debtor is of the opinion that the proposed Plan provides more for each class of creditors and represents the statutorily mandated payment of priority claims.

### C.    Dismissal of Case.

Dismissal of the case likely would have a disastrous result on the value of the Debtor's assets and the return to holders of Claims and Interests. Without limitation, dismissal of the case would terminate the automatic stay and allow the Secured Creditor to immediately foreclose its liens on substantially all of the Debtor's assets. Moreover, dismissal of the case would leave the Debtor without sufficient funding to preserve assets pending their liquidation. Dismissal also would terminate all means for the repayment of Unsecured Creditors under the Plan. In summary, dismissal of the Case would drastically reduce the value of the Debtor's assets, would lower the return to the Secured Creditor, and essentially would eliminate any return to holders of other Claims and Interests. The Debtor believes that dismissal of the case is not a viable alternative to the Plan.

### D. Alternative Chapter 11 Plan.

If the Plan is not confirmed, the Debtor and other parties in interest, including, without limitation, holders of Claims and Interests and any official statutory committee, could propose an alternative plan. The Debtor believes, however, that the Plan will provide the greatest and most expeditious return to holders of Claims and Interests. Because the Claim of the Secured Party exceed the expected liquidation value of the Debtor's assets, an alternative plan would not likely provide for any distributions to parties other than the Secured Party. The formulation, negotiation, and confirmation of an alternative plan also would significantly delay the administration of the Debtor's case and would have a negative impact on the Debtor's ability to reorganize. Under the circumstances, the Debtor submits that confirmation of an alternative plan is unlikely on terms and conditions as favorable to holders of Claims and Interests as those in the Plan.

## XI. CONCLUSION/RECOMMENDATION.

Based on the foregoing, the Debtor believes that the Plan is the best alternative to maximize the value of the Debtor's assets and to maximize the return to creditors and equity security holders. The Debtor believes confirmation of the Plan is in the best interests of all parties in interest in the case.

The Debtor recommends that all parties entitled to cast ballots vote to ACCEPT the Plan.

Respectfully submitted August 7, 2020.

Debtor and Debtor-in-possession

WALKER MACHINE TOOL SOLUTIONS, INC.

*/s/ Linda Walker*
LINDA WALKER, DIRECTOR/INCORPORATOR

*/s/ Stuart M. Maples*
STUART M. MAPLES
COUNSEL FOR DEBTOR

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

-20-

## CERTIFICATE OF SERVICE

I do hereby certify that on August 7, 2020, a copy of the foregoing document was served on the following by Electronic Case Filing a copy of the same.

J. Thomas Corbett
Bankruptcy Administrator
1800 5th Avenue North
Birmingham, AL 35203

All parties requesting notice

I do hereby certify that on August 7, 2020, a copy of the foregoing document was served on the following by mailing a copy of the same United States Mail, properly addressed and first-class postage prepaid.

All parties on the matrix attached hereto

*/s/ Stuart M. Maples*
STUART M. MAPLES

-21-

```
Label Matrix for local noticing          DCR Mortgage Partners IX, LP          LAH Commercial Real Estate
1126-2                                    c/o Baker Donelson                    c/o Blake Greeves
Case 19-04553-DSC11                       420 20th Street N.                    2850 Cahaba Road, Ste. 200
NORTHERN DISTRICT OF ALABAMA              Suite 1400                            Birmingham, AL 35223-2361
Birmingham                                Birmingham, AL 35203-3221
Fri Aug  7 12:50:30 CDT 2020

Prestige Equipment                        Walker Machine Tool Solutions, Inc.   U. S. Bankruptcy Court
Attn: Adam Herman                         P.O. Box 339                          Robert S. Vance Federal Building
35 Pinelawn Rd Ste 203W                   Trinity, AL 35673-0003                1800 5th Avenue North
Melville, NY 11747-3177                                                         Birmingham, AL 35203-2111

Alabama Department of Revenue             American Express                      American Express National Bank
PO Box 327483                             PO Box  650448                        c/o Becket and Lee LLP
Montgomery, AL 36132-7483                 Dallas, TX 75265-0448                 PO Box 3001
                                                                                Malvern  PA 19355-0701

Department of Revenue                     General Counsel                       (p)INTERNAL REVENUE SERVICE
Jefferson County Courthouse               State Department of                   CENTRALIZED INSOLVENCY OPERATIONS
Birmingham  AL  35203                     Industrial Relations                  PO BOX 7346
                                          Montgomery  AL  36102                 PHILADELPHIA PA 19101-7346

Internal Revenue Service                  Joyce White Vance                     Loretta Lynch US Attorney General
P.O. Box 7346                             US Attorney General                   US Dept. of Justice
Philadelphia, PA  19101-7346              1801 4th Ave North                    950 Pennsylvania Ave NW
                                          Birmingham, AL 35203-2101             Washington, DC 20530-0009

Luther Strange                            Regions Bank                          Regions Bank
Alabama Attorney General                  PO Box 12926                          PO Box 1994
PO Box 300152                             Birmingham, AL 35202-2926             Birmingham, AL 35201-1994
Montgomery, AL 36130-0152

Samual C. Pierce                          Secretary of the Treasury             State of Alabama
Baker, Donelson, Bearman et al.           1500 Pennsylvania Ave., NW            Department of Revenue Legal Division
420 20th Street North                     Washington, DC 20220-0001             PO Box 320001
Birmingham, AL 35203-5200                                                       Montgomery, AL 36132-0001

State of Alabama Dept of Revenue          U.S. Securities and Exchange Commission  United States Attorney
P O Box 320001                            Branch of Reorganization              Northern District of Alabama
Montgomery  AL 36132-0001                 950 East Paces Ferry Road Ste 900     1801 Fourth Avenue North
                                          Atlanta, GA 30326-1382                Birmingham, AL 35203-2101

J. Thomas Corbett                         Jon A Dudeck                          Stuart M Maples
Bankruptcy Administrator                  Bankruptcy Administrator-Bham Office  Maples Law Firm, PC
1800 5th Avenue North                     1800 5th Ave N Rm 132                 200 Clinton Avenue W.
Birmingham, AL 35203-2111                 Birmingham, AL 35203-2126             Suite 1000
                                                                                Huntsville, AL 35801-4919
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Internal Revenue Service              (d)Internal Revenue Service
801 Tom Martin Dr                     P O Box 21126
Birmingham AL 35211                   Philadelphia PA 19114
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)American Express          (d)DCR Mortgage Partners IX, LP      (d)Internal Revenue Service
PO Box 650448                c/o Baker Donelson                   Centralized Insolvency Operations
Dallas, TX 75265-0448        420 20th Street N., Suite 1400       PO Box 7346
                             Birmingham, AL 35203-3221            Philadelphia, PA 19101-7346


(d)Regions Bank              End of Label Matrix
PO Box 12926                 Mailable recipients    26
Birmingham, AL 35202-2926    Bypassed recipients     4
                             Total                  30
```